**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DUSTIN J. BOUDREAUX**                    **CIVIL ACTION**

**VERSUS**                                 **NO: 09-7789**

**ST. CHARLES MOSQUITO**                   **SECTION: B(4)**
**CONTROL, INC.**

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant St. Charles Mosquito Control, Inc.'s ("St. Charles Mosquito")Motion to Dismiss Complaint (Rec. Doc. No. 7). The Motion is opposed by Plaintiff Dustin J. Boudreaux ("Boudreaux") (Rec. Doc. No. 8). Defendant filed a reply memorandum (Rec. Doc. No. 11). For the following reasons, the Motion to Dismiss Complaint is **GRANTED.**

<u>**BACKGROUND**</u>

The Cause of Action arises out or an alleged employment discrimination violation. Boudreaux and St. Charles Mosquito are both Louisiana citizens. Boudreaux began employment with St. Charles Mosquito on October 9, 2007 as a field inspector. At the time, Boudreaux was made aware that his position required him to obtain a mosquito control applicator's certification from the State of Louisiana within six months of starting employment. Boudreaux took and failed the examination on two separate occasions in July and August 2008. In September, 2008, Boudreaux advised St. Charles Mosquito that he suffers from dyslexia. He also requested a reader for the examination. St. Charles Mosquito attempted on to get the

State to provide Boudreaux with his requested accommodation. The State refused.

St. Charles Mosquito then voluntarily contacted the Job Accommodation Network in Washington on November 20, 2008 and purchased a special reading pen for Boudreaux to use for the examination. On December 19, 2008, Boudreaux filed a "Charge of Discrimination," number 461-2009-00064 (the "2008 EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination under the American's with Disabilities Act ("ADA") as a result of these events.

In January of 2009, St. Charles Mosquito Control finally obtained the State's permission for Boudreaux to use the pen during his examinations. Boudreaux took one portion of the examination on February 19, 2009 using the reader pen provided by St. Charles Mosquito and passed. In late February 2009, St. Charles Mosquito received its first notice of the 2008 EEOC Charge. On March 26, 2009, Boudreaux passed the final portion of the certification examination. After investigation, the EEOC dismissed the 2008 EEOC Charge on March 31, 2009, having concluded that there was insufficient evidence of a violation of the ADA by St. Charles Mosquito. *(See Defendant's Exhibit "B")*

Meanwhile, Boudreaux repeatedly failed to report to work. On February 9, 2009, St. Charles Mosquito met with Boudreaux to discuss his excessive absenteeism. St. Charles Mosquito met with Boudreaux again on March 6, 2009 to advise that his continued failure to report

to work was unacceptable and that he would face disciplinary action if it continued.

Boudreaux submitted false Daily Activity Reports to St. Charles Mosquito on February 18, 2009, March 10, 2009, and March 12, 2009. Boudreaux expressly claimed in the Daily Activity Reports to have inspected various streets but did not. As a result, St. Charles Mosquito terminated Boudreaux's employment on April 17, 2009 due to misconduct, including but not limited to falsifying reports, and excess absenteeism.

On June 14, 2009, Boudreaux filed a second EEOC "Charge of Discrimination" (the "2009 EEOC Charge"). The 2009 EEOC Charge was based solely on an alleged retaliatory firing in purported violation of Title VII of the Civil Rights Act. *(See* Defendant's Exhibit "C"). Boudreaux did not assert in the 2009 EEOC Charge any claim for retaliation under the ADA. *Id*. On October 14, 2009, the EEOC dismissed the 2009 EEOC Charge because St. Charles Mosquito does not employ a sufficient number of employees to be subject to Title VII. *See* October 14, 2009 "Dismissal and Notice of Rights" Defendant's Exhibit "D."

The EEOC never considered a retaliatory discharge claim under the ADA. The only claims brought to the EEOC under the ADA were dismissed prior to Boudreaux's termination, on March 31, 2009. On December 23, 2009, Boudreaux filed the present Complaint in this Court based on the October 14, 2009 Dismissal and Notice of Rights issued by the EEOC as a result of the failed Title VII retaliatory discharge claim. In his

Complaint, Boudreaux alleges violations of the ADA, the Louisiana Employment Discrimination statutes, and the Louisiana Whistleblower statute.

---

### A. Standard for FRCP 12(b)(6) Motion to Dismiss

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Detailed factual allegations are not necessary. Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2002). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Legal conclusions are not entitled to an assumption of truth. 129 S. Ct. at 1950. Determining the sufficiency of a pleading requires a two prong analysis. See 129 S. Ct. at 1951. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Id.* Next, the court considers the factual allegations to "determine if they plausibly suggest an entitlement to relief." *Id.*

**B. Exhaustion of Administrative Remedies**

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. Title VII grants an aggrieved employee the right to file suit in federal district court, *see* 42 U.S.C. § 2000e-16(c), but before bringing suit, an employee must exhaust his administrative remedies against his employer. *See Francis*, 58 F.3d at 192; *Brown v. General Servs. Admin.*, 425 U.S. 820, 832-33, 96 S.Ct. 1961, 1967-68, 48 L.Ed.2d 402 (1976). If an employee fails to exhaust his administrative remedies, the district court cannot adjudicate the employee's Title VII claim. *See Porter v. Adams*, 639 F.2d 273, 276 (5th Cir.1981) (noting that exhaustion is "an absolute prerequisite" to suit under § 2000e-16); *Edwards v. Department of the Army*, 708 F.2d 1344, 1346 (8th Cir.1983). Therefore, and ADA claimant must first file a timely claim with the EEOC and receive a right to sue letter before a lawsuit on the ADA claim can be filed.

Defendant alleges that Boudreaux has never filed an ADA claim with the EEOC based on retaliatory discharge. The only ADA claim was dismissed by the EEOC on March 31, 2009, well before Boudreaux's employment was terminated by St. Charles Mosquito. Plaintiff's subsequent 2009 EEOC Charge was based solely on Title VII, not the ADA. *(See* Defendant's Exhibit C).

Plaintiff argues that he filed an initial charge, EEOC Charge No. 461-2009-00064 (Defendant's exhibit A), alleging discrimination based on the Americans with Disabilities Act ("ADA"). Specifically, Plaintiff checked off the box for "disability" on the charge form and stated:

> On September 23, 2009, I informed Respondent of my disability and my need for a reasonable accommodation. On October 7, 2008, I was denied an accommodation to my disability. I believe I was discriminated against because of my disability in violation of the Americans with Disabilities Act.

Plaintiff filed another EEOC Charge of discrimination alleging retaliation. Specifically, Plaintiff checked off the box for retaliation on the charge form and stated in particulars:

> On October 21, 2008, I filed a discrimination based on my disability with Charge Number 461-2009-00064 and with OSHA against St. Charles Mosquito Control. On April 17, 2009, I was retaliated against by being discharged from my job as an Inspector earning $10 per hour for filing the discrimination complaint. Respondent employs 15 to 100 employees.
>
> I believe I have been discriminated against in retaliation for filing a previous EEOC complaint with Charge Number 461-2009-00064 in violation of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff argues that while he did not check the disability discrimination box he referenced the first EEOC filing in the particulars of the Second Charge and therefore he has exhausted his administrative remedies.

In *Miller v. Southwestern Bell Telephone Co.,* the Fifth Circuit dealt with a similar issue. 2002 WL 31415083 (5th cir. 2002). The Fifth Circuit was faced with whether the claimant's

failure to fill in the appropriate box for retaliation, when he already marked the box for disability and age discrimination, compels the conclusion that he failed to exhaust his administrative remedies before filing a lawsuit under the ADA. *Id.* at *6. The Fifth Circuit upheld the district court's grant of summary judgment because the claimant failed to exhaust his administrative remedies prior to the Title VII lawsuit. *Id.* Additionally, the Supreme Court has also held that a plaintiff may not bring claims in a lawsuit that were not included in the filed EEOC charge. *Alexander v. Gardner-Denver Co.,* 415 U.S.36, 47 (1974).

However, the Fifth Circuit in *Miller* found instructive that a plaintiff's failure to fill in the appropriate box in the filed charge, coupled with the inability to describe the general nature of the claim in the narrative section of the charge forms a sufficient basis to summarily dismiss the claim. *Id. citing Cable v. Ivy Tech State College,* 200 F.3d 467, 477 (7th Cir. 1999)(Court held that when a plaintiff fails to mark the appropriate box for "retaliation" but continues to seek relief for disability discrimination and retaliation, the plaintiff has nevertheless failed to exhaust his administrative remedies.).

Here, plaintiff did not check the disability discrimination box in his Second Charge but he did reference the first EEOC filing in the particulars of the Second Charge. Additionally, the second EEOC complaint he filed against St. Charles Mosquito, Charge Number

7

461-2009-01256 alleged a violation of Title VII, rather than a violation of the ADA. Plaintiff claims that "clearly [his} second Charge of Discrimination for retaliation was based on his initial charge for disability discrimination under the ADA." (Rec. Doc. No. 8, p. 3). The Court finds that in this instance it is not clear that Defendants had notice that the retaliation claim stemmed from Plaintiff's initial Charge of violation of the ADA. The policy behind checking the right boxes and clearly articulating a factual basis and/or supplementing charges with additional information serves to enhance the administrative enforcement process by ensuring that the EEOC can conduct a full investigation while also providing the employer with advanced notice of the claim and opportunity to resolve the dispute. *Miller*, 2002 WL 31415083 at *6 *citing Harper v. Godfrey Co.,* 45 F.3d 143, 149 (7th cir. 1995). Here, the EEOC additionally never investigated the ADA retaliatory discharge claim. Therefore, the information, or lack thereof, included on Plaintiff's filed EEOC charge creates a strong presumption in favor of finding of failure to exhaust administrative remedies.

Plaintiff correctly notes that in the Fifth Circuit mere technical errors in an EEOC charge cannot be the basis for dismissal. *Sanchez v. Standard Brands Inc.,* 431 F.2d 455, 460-61 (5th Cir. 1970). Plaintiff's reliance on *Sanchez* is misplaced here. The Fifth Circuit in *Sanchez* held that a charge

8

"may be amended to cure technical defects or omissions" and any such amendment will "relate back" to the date of the initial filing of the charge when the newly added allegations arise out of the same subject matter as the original charge. *Id.* at 461. The Fifth Circuit found that the amended charge did relate back to the original charge and that the plaintiff had properly and timely filed a claim of race discrimination with the EEOC prior to filing the suit. *Id.* Plaintiff cannot claim that he ever filed an amended EEOC charge to correct his error in labeling his claim as one under Title VII rather than the ADA.

*Sanchez* also discussed the proper scope of a judicial complaint. In *Sanchez*, the employer also argued that the EEOC charge, even as amended, was not consistent with the judicial complaint in the latter contained new and distinct allegations which were not contained in the EEOC charges. *Id.* at 465. The Court rejected the employer's argument that "every particular fact alleged in the judicial complaint must have a direct counterpart in the charge of discrimination." *Id.* In fact, the Court held:

> ...the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.
>
> The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the

9

> matter ever become the subject of court action. Thus it is
> obvious that the civil action is much more intimately related
> to the EEOC investigation than to the words of the charge
> which originally triggered the investigation. Within this
> statutory scheme, it is only    logical to limit the permissible
> scope of the civil action to the scope of the
> EEOC investigation which can reasonably be expected to grow
> out of the charge of discrimination.

*Id.* at 466.

In the instant matter, in accordance with *Sanchez* and other Fifth Circuit precedent, Plaintiff's judicial complaint exceeds the "scope" of the EEOC investigation triggered by his second EEOC charge. Plaintiff did not properly assert a claim for retaliatory discharge under the ADA with the EEOC and the EEOC never investigated any such claim. Plaintiff's complaint, therefore must be dismissed for lack of subject matter jurisdiction.

**C. Timeliness of ADA Claims**

Defendant claims that under the ADA, Plaintiff's claims are time barred because such a charge must be filed within one hundred and eighty days after the alleged unlawful employment practice occurred. Defendant argues that the alleged unlawful employment practice was Plaintiff's purportedly wrongful termination on April 17, 2009. Plaintiff, however, did not file any claims for retaliatory discharge under Section 1203(a) until the filing of this lawsuit on December 23, 2009, over the 180 days after his discharge. Plaintiff claims that The Louisiana Commission on Human rights which shares administrative investigatory duties with the

EEOC, has 300 days to file an administrative charge.

The ADA prohibits any person from retaliating against an individual because he made a charge alleging a violation of the ADA. 42 U.S.C. §12203(a). A violation of §12203(a) "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." *See* 42 U.S.C. §2000e-5(e)(1) made applicable to a retaliation charge by 42 U.S.C. §§12203(c) and 12117(a). When a claim under the ADA is first made after the 180 days has run, dismissal is appropriate. *Fussell v. BellSouth Communications*, 1998 W.L. 12229, *2 (E.D. La. 1998). Therefore, Plaintiff's claims under the ADA are time-barred and must be dismissed.

### D. Remaining State Law Claims

Plaintiff asserts two state law claims. One under the Louisiana Employment Discrimination statutes and the other under the Louisiana Whistleblower's statute. To prevail in a claim under the Louisiana Whistleblower's statute, the plaintiff must allege and prove a "violation of sate law," specifically a state statute. La. R.S. Section 23:697. As such, absent the ADA claim, there is no independent basis for the Court to exercise jurisdiction over the state law claims.

The United States Code provides that the district court may decline to exercise supplemental jurisdiction over related claims if "the district court has dismissed all claims over which it has

original jurisdiction." 28 U.S.C. Section 1367(c). The authority to dismiss supplemental state law claims is permissive, rather than mandatory. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595 (5th Cir. 2009). In this circuit the general rule is that "a court should decline to exercise jurisdiction over remaining state law claims when all federal-law claims are eliminated before trial." *Id.* at 601. A district court generally abuses its discretion to dismiss remaining state law claims if it does so "after investing a significant amount of judicial resources in the litigation." *Id.* Here, the federal claims are being dismissed at a very early stage in these proceedings. There is no prejudice to Boudreaux as a result of the dismissal of the state law claims. Accordingly,

The Motion to Dismiss is **GRANTED** as to all federal claims and the state claims are remanded to state court for all further proceedings. To the extent that certain record documents beyond the complaint were cited here, summary judgment on noted legal issues would also be appropriate as to undisputed facts from the EEOC record.

New Orleans, Louisiana this 19th day of July, 2010.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE